UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                     Plaintiff,

    -against-


RAYMOND J. PIRELLO, JR.,
MARCELLO FOLLANO,
ROBERT CASSINO,
ANTHONY DITUCCI,
JOSEPH RIVERA,
PRIOR 2 IPO INC,
LATE STAGE ASSET MANAGEMENT, LLC,
PRE IPO MARKETING INC., and
JL RIVERA ENTERPRISES LTD.

                    Defendants.
-------------------------------------X

**MEMORANDUM AND ORDER**
23-CV-8953 (KAM)(MMH)

**MATSUMOTO, United States District Judge:**

On December 6, 2023, the Securities and Exchange Commission (the "SEC") commenced the instant civil action against Defendants Raymond J. Pirrello, Jr. ("Pirrello"), Marcello Follano ("Follano"), Robert Cassino ("Cassino"), Anthony DiTucci ("DiTucci"), Joseph Rivera ("Rivera"), Prior 2 IPO Inc. ("Prior 2 IPO"), Late Stage Asset Management, LLC doing business as Late Stage Management ("Late Stage"), Pre IPO Marketing Inc. ("Pre IPO Marketing"), and JL Rivera Enterprises Ltd. ("JL Rivera Enterprises") (collectively, "Defendants"), alleging that Defendants engaged in unregistered securities offerings whereby

Defendants fraudulently solicited investor funds for the purpose of acquiring stakes in certain investment vehicles purportedly designed to purchase shares of private companies in advance of those companies' potential initial public offerings ("IPO"). *See generally Sec. & Exch. Comm'n v. Pirello, et al.*, No. 23-cv-8953 (KAM) (MMH) ("Civil Case"), (Civil Case, ECF No. 1, "SEC Compl.")  In connection with this allegedly fraudulent scheme, Defendants are alleged to have disseminated investor materials containing material misrepresentations and omissions relating to the fee structure for the advertised investments.  (SEC Compl. ¶ 1.)  According to the SEC Complaint, Defendants raised approximately $528 million from more than 4,000 investors between March 2019 and July 2022 within the Eastern District of New York and elsewhere.  (SEC Compl. ¶ 2.)

On the same day that the Civil Case was initiated, the Honorary Magistrate Judge James R. Cho issued an order unsealing a three-count Indictment returned by a grand jury sitting in the Eastern District of New York, which charged Pirrello with virtually identical conduct.  *See United States v. Raymond J. Pirello, Jr.*, No. 23-cr-499 (KAM) (JRC) ("Criminal Case"), (Criminal Case, ECF No. 1, "Indictment").

Before this Court is the January 19, 2024 motion by the United States, through the United States Attorney in the Eastern District of New York (the "Government"), to intervene in the

instant Civil Case in order to seek a stay of civil proceedings pending the outcome of the Criminal Case.  (ECF No. 25, "Govt. Mot.")  Neither the SEC nor Defendants have opposed the Government's motion.

For the reasons set forth below, the Government's motion to intervene and for a stay of this action is **GRANTED**.

BACKGROUND

On December 5, 2023, the Government filed a sealed three-count Indictment charging Pirrello with one count of Conspiracy to Commit Securities Fraud in violation of 18 U.S.C. §§ 371 and 3551, one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1349 and 3551, and one count of Securities Fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff.  The Indictment refers to several of the entities named as Defendants in the SEC Complaint, as well as Pirrello, who is listed both as a Defendant in the SEC Complaint and as the sole Defendant in the Indictment.  (Indictment ¶¶ 1-7.)  Upon application by the Government, the Indictment was unsealed on December 6, 2023.

The Indictment describes a fraudulent scheme wherein "Pirrello, together with others . . . defraud[ed] investors and prospective investors in [connection with] securities offered by Late Stage through material misrepresentations and omissions relating to, among other things the existence and amount of fees paid by investors in stock offered by Late Stage and the

3

methodology of setting prices for shares of stock offered by Late Stage." (Indictment ¶ 12.) The Indictment describes Late Stage as "a series of investment funds . . . [that] invested in stock issued by privately held companies that, at the time of investment, purportedly anticipated either making an [IPO] or being sold to a larger business in the relatively near term." (Indictment ¶ 1.) Among the "material misrepresentation and omissions" described, Pirrello is alleged to have "directed [] employees to depict the fund as having 'no up front fees'" such that "[i]nvestors were [] led to believe that all their invested capital was used to purchase stock" when "[i]n reality, a fee ranging from 10-50% of each investment was extracted up front in the form of a markup to the price of the stock[.]" (Indictment ¶¶ 12, 15.) The Indictment further alleges that "between approximately March 2019 and July 2022, [Pirello and others] raised approximately $528 million from investors." (Indictment ¶ 12.)

The SEC Complaint alleges that Defendants' participation in the same conduct alleged within the Indictment also constitutes a violation of federal securities laws and asks this Court to permanently enjoin Defendants from violating federal securities laws and rules, order Defendants to disgorge all ill-gotten gains originating from the alleged violations and pay civil monetary penalties, and permanently prohibit Pirello, Follano,

Cassino, DiTucci, and Rivera from serving as officers or directors of any registered company.  (SEC Compl. ¶ 12.) Specifically, the SEC Complaint alleges that "Defendants used a network of unregistered sales agents to engage in unregistered offerings of securities in investment vehicles that provided access to shares of private companies that may hold an [IPO]" and that "Defendants procured investor funds by fraud, falsely telling investors that . . . [they] would pay no upfront fees or commissions" when, in fact, "investors were charged exorbitant upfront markups on all investments, allowing Defendants to pocket millions of dollars[.]"  (SEC Compl. ¶ 1.)  The investment vehicles purportedly used by Defendants are a collection of "at least fifty private investment funds" referred to as "Late Stage[.]"  (SEC Compl. ¶ 2.)

The allegations in the Indictment and in the SEC Complaint relate to the same underlying set of facts, namely the purportedly fraudulent scheme to defraud investors and potential investors in pre-IPO companies through material misrepresentations and omissions.  Both the Indictment and the SEC Complaint allege that Pirello, together with others, solicited investor funds through material misrepresentations and omissions.  (Indictment ¶ 12); (SEC Compl. ¶ 1.)  Both the Indictment and the SEC Complaint elaborate that one such alleged misrepresentation and omission relates to the fee structure

associated with the advertised investment opportunity, whereby
investors were informed that they would not be charged any fees
or commissions, notwithstanding the fact that Defendants are
alleged to have surreptitiously applied exorbitant markups on
each initial investment.  (Indictment ¶ 17-20); (SEC Compl. ¶¶
82-83, 86.)  Both the Indictment and the SEC Complaint refer to
Late Stage as an investment vehicle comprised of various
investment funds, through which Pirello and others invested in
companies believed to be on the brink of either going public or
effectuating a private acquisition.  (Indictment ¶ 1); (SEC
Compl. ¶¶ 2-3.)  Finally, the Indictment and SEC Complaint refer
to the same time period of the alleged conduct, approximately
equivalent markup rates, identical amounts of fraudulently
solicited investor funds, and many of the same actors, including
most saliently, Pirello.   (Indictment ¶¶ 1, 2, 5, 20-21); (SEC
Compl. at 1, ¶¶ 2, 102.)

Approximately six weeks after the date on which the SEC
initiated this matter and the Indictment in the Criminal Case
was unsealed, the Government moved to intervene in the instant
civil case in order to seek a stay of all civil proceedings
pending the outcome of the parallel Criminal Case.  (Govt. Mot.
at 1.)  The Government has represented in its motion (Got. Mot.
at 3), and by subsequent letter updates to the Court, dated
January 22, 2024 (ECF No. 26), and January 23, 2024 (ECF No. 34)

that Defendants Pirello, Follano, Cassino, Ditucci, and Rivera (the "Individual Defendants") do not object to the Government's motion.  The remaining Defendants have not opposed the Government's motion.[1]  The Government has further represented that the SEC does not object to the Government's motion.  (Got. Mot. at 3.)

## LEGAL STANDARD

### I.  Intervention as of Right

Pursuant to Federal Rule of Civil Procedure 24, a party may intervene in a civil action either as of right or with the permission of the Court.  Intervention as of right pursuant to Fed. R. Civ. P. 24 is appropriate when, upon a timely motion, a party seeking to intervene:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

An applicant seeking to intervene as of right must "(1) timely file an application, (2) show an interest in the action,

---

[1] The Government filed and served the instant motion on January 19, 2024. Pursuant to E.D.N.Y. Local Civil Rule 6.1(b)(2), Defendants were permitted the opportunity to file "any opposing affidavits or answering memoranda . . . within fourteen days after service of the moving papers[.]"  Defendants Late Stage, Prior 2 IPO, Pre IPO Marketing, and JL Rivera Enterprises have not filed any opposition within the allotted 14 days and the time to oppose the Government's motion has now lapsed.

(3) demonstrate that the interest may be impaired by the disposition of the action, *and* (4) show that the interest is not protected adequately by the parties to the action." *Griffin v. Sheeran*, 767 F. App'x 129, 132 (2d Cir. 2019) (quoting *Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996)).  The applicant's "failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (citing *"R" Best Produced, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)) (emphasis in original).

### A. Timeliness

Although there is no bright line rule regarding the timeliness requirement, the Second Circuit has specified considerations that may guide the District Court's determination.  Those considerations include "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from [any] delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *MasterCard Int'l Inc. v. Visa Int'l Serv Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006).  Ultimately, "[t]he timeliness requirement is flexible, and the decision is [] entrusted to the district judge's sound discretion." *United*

*States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594-95 (2d Cir. 1986).

### B. Cognizable Interest

In order to demonstrate a cognizable interest in the action under Fed. R. Civ. P. 24(a)(2), an applicant must point to a "direct, substantial, and legally protectable" interest. *Bridgeport Guardians, Inc v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (internal citation omitted). One such interest, which has consistently been recognized by district courts within this Circuit, is the Government's "discernable interest in . . . prevent[ing] discovery in [a] civil case from being used to circumvent the more limited scope of discovery in [a parallel] criminal matter." *Sec. & Exch. Comm'n v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988); *see also Sec. & Exch. Comm'n v. Milton*, No. 21-cv-6445 (AKH), 2022 WL 3156180, at *3 (S.D.N.Y. Aug. 8, 2022), *Sec. & Exch. Comm'n v. Shkreli*, No. 15-cv-7175 (KAM), 2016 WL 1122029, at *2 (E.D.N.Y. Mar. 22, 2016). Moreover, the Supreme Court has recognized the strong interest of the public and the Government in the enforcement of criminal laws. *Cascade Natural Gas Co. v. El Paso Natural Gas Co.*, 386 U.S. 129, 132-36 (1967).

### C. Impairment of Cognizable Interest

With respect to impairment, courts in this Circuit are consistently mindful of the risk that discovery proceedings in a

civil case can impair both the Government's and defendants'
interests in a parallel criminal case. *See Milton*, 2022 WL
3156180, at *4 ("courts have recognized that refusing to grant a
stay might also expand the rights of criminal discovery beyond
the limits of Rule 16(b) of the Federal Rules of Criminal
Procedure, expose the basis of the defense to the prosecution in
advance of trial, or otherwise prejudice the case[]")(internal
quotation marks and citation omitted). Indeed "the strongest
case for deferring civil proceedings until after completion of
criminal proceedings is where a party under indictment for a
serious offense is required to defend a civil or administrative
action involving the same matter." *Sec. & Exch. Comm'n v.
Dresser Industries, Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir.
1980). In such cases, the discovery permitted under Fed. R.
Civ. P. 26 threatens to "undermine the party's Fifth Amendment
privilege against self-incrimination, expand the rights of
criminal discovery beyond the limits of [Fed. R. Crim. P.] 16(b)
[and 18 U.S.C. § 3500], expose the basis of the defense to the
prosecution in advance of criminal trial, [and] otherwise
prejudice the [criminal] case." *In re Par Pharmaceutical, Inc.
Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) (quoting *Dresser*,
628 F.2d at 1376.) Moreover, because the restrictions in the
scope of discovery permitted in a criminal case are "designed to
. . . deter[] efforts to tailor testimony, suborn perjury,

fabricate evidence, and intimidate witnesses[,]" expansion of the scope of discovery in a criminal case by virtue of the discovery process in a parallel civil proceeding can prejudice both parties and impair the overall "integrity of the criminal justice process." *Sec. & Exch. Comm'n v. Garelick*, No. 23-cv - 5567 (PGG), 2023 WL 8602840, at *6 (S.D.N.Y. Dec. 12, 2023).

### D. Adequate Protection

Finally, an applicant must demonstrate that the "existing parties" cannot "adequately represent th[e] interest[s]" at risk. Fed. R. Civ. P. 24(a)(2). Where the United States Attorney seeks to intervene in a civil case that involves another [sector] of the United States government, the "Court must recognize that various branches within the United States Government often have diverging interests." *Sec. & Exch. Comm'n v. Downe*, No. 92-cv-4092 (PKL), 1993 WL 22126, at *12 (S.D.N.Y. Jan. 26, 1993). In such circumstances, the SEC does not necessarily serve as an adequate representation of the United States Attorney's "qualitatively different" interest in protecting the integrity of its criminal investigations and enforcing criminal laws. *Downe*, 1993 WL 22126, at *12.

## II. Permissive Intervention

A party may also seek permissive intervention, pursuant to Fed. R. Civ. P. 24(b), which dictates, in relevant part, that upon a timely motion, a Court "may permit anyone to intervene

who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Permissive intervention pursuant to Rule 24(b) 'is discretionary with the trial court.'" *Citizens Against Casino Gambling in Erie Cty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (summary order) (quoting *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.,* 797 F.2d 85, 89 (2d Cir. 1986)); *see also St. John's Univ., N.Y. v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011) ("A district court has broad discretion under Rule 24(b) to determine whether to permit intervention").

**III. Stay of Proceedings**

A district court is well within its discretion to "stay [] civil proceedings when the interests of justice . . . require such action." *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (internal quotation marks omitted); *see also U.S. Commodity Futures Trading Comm'n v. Lamarco*, No. 17-cv-4087 (ADS), 2018 WL 2103208, at *4 (E.D.N.Y. May 7, 2018) ("It is well established that district courts have discretionary authority to stay a case when the interests of justice so require.") This discretion stems from "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

In *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012) (internal citation omitted), the Second Circuit established a six-factor test to determine whether a stay of civil proceedings, pending the outcome of a parallel criminal case, serves the interests of justice. In accordance with the six-factor test, this Court will consider:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Louis Vuitton*, 676 F.3d at 99.

The Second Circuit has cautioned, however, that although the six-factor test serves as a "guide for the district court," the district court must ultimately exercise discretion based on its "studied judgment, . . . the particular facts before [the Court,] and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public, or the court." *Id*; *see also Sec & Exch. Comm'n v. McGinnis*, No. 14-cv-6 (CR), 2016 WL 591764, at *3 (D. Vt. Feb. 12, 2016).

Although "[a] total stay of civil discovery . . . is an extraordinary remedy[,]" *Sec. & Exch. Comm'n v. Javice*, No. 23-cv-2795 (LJL), 2023 WL 4073797, at *3 (S.D.N.Y. June 20, 2023)

(internal citation omitted), "[a] court will generally stay a civil proceeding when a criminal investigation has ripened into an indictment[.]" *Hicks v. City of New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003) ("the strongest argument for granting a stay is where a party is under criminal indictment"). Even where no objections are asserted however, the party "'seeking a stay bears the burden of establishing its need.'" Shkreli, 2016 WL 1122029, at *3 (quoting *McGinnis*, 2016 WL 591764, at *3).

## DISCUSSION

### I.  Intervention

"It is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact." *Milton*, 2022 WL 3156180, at *3 (internal citations omitted). "Whether couching the decision in terms of mandatory or permissive intervention or simply referring to Rule 24 without specifying the subsection . . . courts in this Circuit have routinely allowed [] prosecutors to intervene in civil litigation in order to seek a stay of discovery." *Sec. & Exch. Comm'n v. Treadway*, No. 04-cv-3464 (VM)(JCF), 2005 WL 713826, at *2 (S.D.N.Y. Mar. 30, 2005). The facts before this Court in the instant case do not warrant a departure from this

14

well-established principle.  The Court therefore finds that the Government may intervene in the instant Civil Case.

### A.    Intervention as of Right

First, the Government's motion is timely.  The SEC Complaint was filed on December 6, 2023.  (SEC Compl.)  The Government moved to intervene approximately a month and a half later, on January 19, 2024.  *See Gulino v. Bd. of Educ.*, No. 96-cv-8414 (KMW), 2009 WL 2972997, at *3 (S.D.N.Y. Sep. 17, 2009) ("Movants filed their motion just [one] month after the case was reassigned . . . so it is timely"); *Shkreli*, 2016 WL 1122029, at *2 (the Government's motion was filed "in a timely manner" because it was filed "just over one month" after "the SEC complaint was filed[.]").  Moreover, discovery has not yet commenced in the instant Civil Case and no party has alleged that they have been prejudiced by the timing of the Government's motion.  Nor has any Defendant opposed the motion to intervene. *See Sec. & Exch. Comm'n v. Berman*, No. 20-cv-10658 (LAP), 2021 WL 2895148, at *2 (June 8, 2021) (pointing to the fact that the "Defendants' time to respond to the complaint has been adjourned *sine dine*, and [that] discovery has not yet commenced" as an indication that the Government's motion to intervene was timely).

Second, the Government asserts that it seeks to intervene in the instant case to protect the "strong interest . . . [of]

the public in the enforcement of criminal laws" (Govt. Mot. at
8-9), and "to prevent Pirrello from obtaining discovery in the
Civil Case outside the restrictions that would otherwise pertain to
him in the Criminal Case." (Govt. Mot. at 14.) Courts in this
Circuit have routinely recognized such interests as "direct,
substantial, and legally protectable." *Delmonte*, 602 F.3d at
473; *see also Chestman*, 86 F.2d at 50 ("[t]he government has a
discernible interest in . . . prevent[ing] discovery in the
civil case from being used to circumvent the more limited scope
of discovery in the criminal matter"); *Sec. & Exch. Comm'n v El-
Khouri*, No. 19-cv-9744 (LAP), 2021 WL 601652, at *2 (S.D.N.Y.
Jan. 26, 2021) ("absent a stay, the civil case could impair or
impede the Government's ability to . . . limit[] the defendants
to the discovery available under the Federal Rules of Criminal
Procedure.")

Third, the Government contends that, in the absence of its
intervention and the requested stay, the scope of discovery
permitted under Fed. R. Civ. P. 26 in the instant case would
impede the Government's ability to limit Pirello to the
discovery available under the Fed. R. Crim. P. 16 and 18 U.S.C.
§ 3500 in the Criminal Case, which could impair the integrity
and progress of the Government's ongoing criminal investigation.
(Govt. Mot. at 14.) This Court, as well as many others, have
recognized the practical risks and incompatible nature of

16

simultaneous discovery proceedings in a civil case and parallel criminal case.  *See Shkreli*, 2016 WL 1122029, at *2 ("further proceedings in this [civil] action could impair the government's interest in limiting the defendants to the discovery available under the Federal Rules of Criminal Procedure"); *Bd. of Governors of the Fed. Reserve Sys. v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery") (internal citation omitted).

Finally, although the interests of the SEC and the Government overlap to some extent, the Government is uniquely focused on the enforcement of criminal statutes and is better equipped to protect that interest itself, "rather than using the SEC as a conduit for such arguments."  *See Downe*, 1993 WL 22126, at *12 ("even though the SEC is involved in this action, the United States Attorney may have an interest in this litigation which is qualitatively different from the SEC's interest."). Accordingly, intervention as of right is warranted in the Civil Case.

### B.  *Permissive Intervention*

Alternatively, permissive intervention under Fed. R. Civ. P. 24(b)(1) is also appropriate.  As discussed above, there are

overlapping facts and legal issues between the SEC Complaint and the Indictment in the Criminal Case.  Indeed, the core factual allegations underlying both cases are virtually identical. *Compare* (SEC Compl. ¶ 1) ("Defendants used a network of unregistered sales agents to engage in unregistered offerings of securities in investment vehicles that provided access to shares of private companies that may hold an [IPO] . . . [and] Defendants procured investor funds by fraud, falsely telling investors that . . . [they] would pay no upfront fees or commissions") *with* (Indictment ¶ 12) ([Pirello] together with others, engaged in a scheme to defraud investors and prospective investors in securities offered by Late Stage through material misrepresentations and omissions relating to, among other things, the existence and amount of fees paid by investors[.]") Because both the Criminal Case and the instant Civil Case "arise out of common questions of law and fact," permissive intervention is also justified.  *Downe*, 1993 WL 22126, at *11.

Accordingly, the Government's motion to intervene in this action is **GRANTED.**

## II. Stay of Proceedings

Having granted the Government's motion to intervene, the Court next turns to the Government's request for a stay of all proceedings in the instant Civil Case.  (Gov. Mot. at 10-19.) The Court finds that the totality of circumstances, taking into

account the six-factor test adopted in *Louis Vuitton*, weigh
heavily in favor of the requested stay.

### A.    *Overlap of the Issues*

The first factor that the Court considers in determining
whether the requested stay serves the interests of justice is
"the extent to which the issues in the criminal case overlap
with those presented in the civil case[.]" *Louis Vuitton*, 676
F.3d at 99.  As previously noted, the facts and allegations
underlying the Indictment and SEC Complaint are essentially the
same and both proceedings involve overlapping legal issues.
Even where "the alleged wrongful conduct in the criminal and
civil actions are not identical," if the "findings and outcome
of the criminal trial may affect the outcome of the civil case,"
the first factor in the six-factor test "tips [] in [] favor" of
granting a stay. *Hicks*, 268 F. Supp. 2d at 241-42.  Here, the
wrongful conduct alleged in the Indictment and the SEC Complaint
relates to the exact same alleged scheme to defraud investors in
Late Stage through various misrepresentations and omissions that
were included in investor materials and communications.  (SEC
Compl. ¶ 1); (Indictment ¶ 12.)  The shared facts underlying the
SEC Complaint and the Indictment, and the overlapping legal
issues raised by both cases strongly weigh in favor of a stay.

### B.    *The Status of the Case*

The second factor in the Court's consideration of the requested stay is "the status of the case, including whether the defendants have been indicted[.]" *Louis Vuitton*, 676 F.3d at 99. Here, Defendant Pirrello has been indicted. Although none of the other Defendants in the instant Civil Case have been indicted, the Government alleges in the Criminal Case that Pirrello engaged in a securities fraud scheme with some of the entities named as Defendants in the Civil Case. *See* (Indictment ¶¶ 1-2.) Moreover, "[a] stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct[.]" *Trustees of Plumbers and Pipefitters Nat. Pension Fund. V. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (finding that "the status of the criminal case . . . weighs in favor of granting a stay" because some of the defendants in the civil case had been indicted in a parallel criminal proceeding, even though not all defendants in the civil case had been indicted).

Importantly, neither Pirrello, nor any other Defendant in the instant case has objected to the Government's motion or otherwise indicated that a stay would adversely impact the status of the case. Accordingly, the current status of the Civil Case warrants the requested stay.

### C.   The SEC's Interests

The third factor in the Court's analysis looks to whether "the private interests of the [SEC] in proceeding expeditiously" outweigh "the prejudice to [the SEC] caused by the delay[.]" *Louis Vuitton*, 676 F.3d at 99. As in *Shkreli*, "[t]he SEC has not affirmatively joined the government's stay application, but instead" indicated that it "does not oppose the motion." *Shkreli*, 2016 WL 1122029, at *5; see (Govt. Mot. at 3.) Because the SEC "has not articulated an interest that requires consideration here," the Court finds that this factor weighs in favor of the requested stay. *Id*.

### D.   *Defendants' Interests*

The fourth consideration in the Court's assessment of the requested stay is "the private interests of and burden on the defendants" if a stay is imposed. *Louis Vuitton*, 676 F.3d at 99. Like the SEC, Defendants have not articulated an interest that weighs against the requested stay. *See Downe*, 1993 WL 22126, at *13 (citing Defendants' "fail[ure] to demonstrate that they will suffer any prejudice if all discovery is stayed in the civil action" as weighing in favor of a stay). "Defendants in civil actions who are also the subjects of criminal charges often cite" the important interest of preserving their rights in a parallel criminal prosecution as a factor weighing in favor of a stay. *Treadway*, 2005 WL 713826, at *4. Such interests include preventing any potentially incriminating statements in

21

the context of the Criminal Case; preserving Defendants' Fifth Amendment rights, on the basis of which a civil jury can draw an adverse inference, and avoiding premature exposure of the basis for a defense theory to the prosecution in advance of trial. *Am. Express Bus. Fin. Corp. v. RW Pro. Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 265 (E.D.N.Y. 2002).  In these circumstances, where the Civil Case was commenced recently, any potential prejudice to Defendants "in the civil case is [also] reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations," *Transworld*, 886 F. Supp. at 1139, and because the outcome of the Criminal Case may help to "narrow the issues" and "prevent . . . unnecessarily duplicative work" in the Civil Case.  *Harris v. Nassau Cnty.*, No. 13-CV-4728 (NGG), 2014 WL 3491286, at *4 (E.D.N.Y. July 11, 2014).  Indeed, "when a defendant faces a criminal prosecution that is likely to accomplish as much if not more than can be achieved through civil litigation, there is little reason to deplete his resources through payment of attorney's fees to defend or participate in civil litigation that, while important, is essentially duplicative."  *In re Worldcom, Inc. Sec. Litig.*, No. 02-cv-3288 (DLC), 2002 WL 31729501, at *9 (S.D.N.Y. Dec. 5, 2002).

   **E.    *The Court's Interest***

Fifth, the Court weighs its own interest in judicial economy and in the efficient resolution of its cases, which are interests that "[t]he Court shares with all parties[.]" *Treadway*, 2005 WL 713826, at *4. The requested stay serves both of these interests. "[T]he Civil Case is likely to benefit . . . from the Criminal Case no matter its outcome." *Sec. & Exch. Comm'n v. One or More Unknown Purchasers of Securities of Global Industries, Ltd.*, No. 11-cv-6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012). This is because "evidence gathered during the criminal prosecution can later be used in the civil action" such that "the resolution of the Criminal Case may reduce the scope of discovery [necessary] in the civil case[.]" *Transworld*, 886 F. Supp. at 1140 (also noting that the "resolution of the criminal case may increase the possibility of settlement of the civil case due to the high standard of proof required in a criminal prosecution."). As such, the Court is satisfied that its interests are best served by the requested stay.

### F.   *The Public Interest*

Finally, the Court assesses whether the public interest weighs in favor of the requested stay.  The public interest, in circumstances where a party faces allegations of unlawful conduct in both civil and criminal proceedings, is multifaceted.  The effective enforcement of our nation's criminal laws and the preservation of the integrity of the process of criminal

prosecution is of paramount importance. *In re Ivan F. Boesky Sec. Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y. 1989) ("a trial judge should give substantial weight to the public interest in law enforcement" because "the public interest in the criminal case is entitled to precedence") (internal citation omitted). So too is the public interest in maintaining effective regulation of our nation's financial markets. *See Arden Way Associates v. Boesky*, 660 F. Supp. 1494, 1499 (S.D.N.Y. 1987) ("the public interest in the integrity of securities markets militates in favor of the efficient and expeditious prosecution of these civil litigations"). However, these interests are not mutually exclusive. In fact, in the instant Civil Case, these interests are best served by a stay, pending resolution of the Criminal Case. *See Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 40 (S.D.N.Y. 1993) ("The public [] has an interest in the preservation of the integrity of competitive markets. However, the pending criminal prosecution [also] serves to advance those same interests"); *see also Transworld*, 886 F. Supp. at 1140 ("Because of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here.") Accordingly, the Court's assessment of the public interest also weighs in favor of the requested stay.

Having conducted a holistic assessment of the relevant interests at stake, the Court finds that the resolution of the

Criminal Case prior to the continuation of the Civil Case will enhance the ability of all stakeholders to properly advance their respective interests in the most effective and expeditious manner. In striking the appropriate balance between competing interests, the requested stay serves the interests of justice. No party has suggested otherwise or identified any interest that would be impaired by the requested stay. Accordingly, the Government's motion for a stay of all proceedings in the instant Civil Case is **GRANTED,** pending resolution of the criminal case.

## CONCLUSION

For the reasons articulated in this Memorandum & Order, the Government's motion to intervene and the requested stay are **GRANTED.** All deadlines in the instant Civil Case will be held in abeyance until the resolution of the Criminal Case. Within **thirty (30)** days of the resolution of *United States v. Raymond John Pirrello, Jr.,* 23-cr-499 (KAM) (JMC), the parties are respectfully requested to file a joint status letter regarding how they intend to proceed in the instant Civil Case via ECF.


**SO ORDERED.**

Dated: February 5, 2024
      Brooklyn, New York

                                  _____
                                    KIYO A. MATSUMOTO
                                  United States District Judge
                                  Eastern District of New York